1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                AT SEATTLE

8    HENRY CASTILLO,

9                          Plaintiff,              Case No. C20-5251-BHS-MLP

10          v.                                     REPORT AND RECOMMENDATION

11   BOBBIE BERKEY, *et al*,

12                          Defendants.

13

14                       I.      INTRODUCTION

15          Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983

16   prisoner civil rights action claiming Department of Corrections ("DOC") employees violated his

17   Eighth and Fourteenth Amendment rights based on an alleged denial of durable medical

18   equipment. (Compl. (Dkt. # 4) at 8.) Plaintiff also alleges the DOC employees' conduct denied

19   him reasonable accommodations under the Americans with Disabilities Act ("ADA"), 42 U.S.C.

20   §§ 12131-12132. (*Id.* at 10.) Plaintiff further alleges a DOC employee arbitrarily "chilled" his

21   grievance regarding these allegations. (*Id.* at 11.) Plaintiff names Bobbie Berkey, Dennis Dahne,

22   Tim Taylor, Kelly Sutera, Timothy Thrasher, Angela Johnson, S. Bangs, Stephen Sinclair, T.

23   Harder, and Stefanie L. Baltzell as Defendants. This matter is before the Court on Defendants'

motion for judgment on the pleadings. (Mot. (Dkt. # 34).) Having considered the parties'
submissions, the balance of the record, and the governing law, the Court recommends
Defendants' motion be GRANTED.

## II.    BACKGROUND

Plaintiff's claims stem from a leg injury he sustained as a result of a car accident in 1981.
(Compl. at 8.) Plaintiff alleges his left leg is shorter than his right leg and that he requires
elevated medical shoes to prevent bone-on-bone grinding in his knee and to prevent lower back
pain that impacts his mobility. (*Id.*) Plaintiff, who is currently confined at Stafford Creek
Corrections Center ("SCCC"), asserts that after he was arrested, his elevated medical shoes were
taken from him. (*Id.*) Plaintiff asserts he was given a wheelchair and cane for his disability,
however, after a riot at SCCC, he was "forced to defend himself" and was subsequently placed in
isolation. (*Id.* at 9.) Based on information contained in the grievances attached to Plaintiff's
complaint, it appears Plaintiff hit someone with his cane during the riot. (*Id.* at 39-40.) As a
result, Plaintiff alleges his wheelchair and cane were taken away by Defendants Baltzell, Taylor,
and Bangs. (*Id.* at 9.)

Plaintiff further alleges he made multiple requests for various accommodations for his
disability. Specifically, he alleges he requested knee braces and elevated medical shoes. (*Id.*) He
also generally alleges that his surgeon provided medical records to SCCC in March of 2019, but
that Defendant Baltzell retained the records. (*Id.*) Plaintiff alleges that as a result of Defendant
Baltzell taking his medical records "nothing happened," presumably regarding treatment for his
legs, until months later when he sent Defendant Berkey a kite asking about his medical records
because he was in pain. (*Id.*) Plaintiff asserts that Defendant Berkey informed him that x-rays of
his right knee showed that treatment for his moderate arthritis would include a change in

medication, but that surgery was not warranted. (*Id.* at 9-10.) Plaintiff further asserts Defendant

Berkey informed him that x-rays showed the discrepancy between the length of Plaintiff's legs

was only 1.05cm, and policy requires discrepancies to be greater than 1.2cm for an inmate to

receive elevated medical shoes. (*Id.* at 10.) Plaintiff also asserts he sent kites to staff regarding

pain caused by his disability, but that they were ignored by Defendants Johnson and Baltzell.

(*Id.*)

Plaintiff filed a grievance about his need for elevated shoes. (*Id.* at 10-11.) Plaintiff

alleges his request was denied because the discrepancy in the length of his legs was not greater

than 1.2cm. (*Id.*) Plaintiff alleges that when he appealed his grievance, Defendant Dahne, a

grievance coordinator, began "chilling [his] grievance" by extending the deadline to respond to

the grievance. (*Id.* at 11.) Plaintiff asserts that when he appealed his grievance to the next level,

Defendant Dahne lied about the date on which the deadline was extended. (*Id.*) Plaintiff asserts

he subsequently filed an emergency appeal of the denial of his grievance that was denied by

Defendant Dahne. (*Id.*)

Plaintiff alleges that after he was released from isolation, he was given a walker but again

denied elevated medical shoes. (*Id.*) He asserts that when he requested elevated medical shoes on

February 4, 2020, he was told he would be seen by medical staff in three months. (*Id.* at 12, 57.)

Plaintiff alleges that in the interim, he submitted a kite seeking review of his request for elevated

medical shoes and request for a knee brace. (*Id.* at 12, 59.) He alleges he was told he had a

medical appointment on March 6, 2020, but that Defendant Harder refused to see him on that

date. (*Id.* at 12.)

### III.    PLAINTIFF'S MOTION FOR EXTENSION OF TIME

Plaintiff submitted a motion for an extension of time to file a response to Defendants' motion for judgment on the pleadings. (Dkt. # 44.) Plaintiff asserts he needs an extension because there is a COVID-19 outbreak at SCCC that prevents him from accessing the law library. (*Id.*) Defendants oppose Plaintiff's motion, arguing Plaintiff has already responded to the pending motion. (Dkt. # 45.)

The Court agrees with Defendants. Defendants filed their motion for judgment on the pleadings on October 6, 2020. On October 20, 2020, Plaintiff asked for and received an extension of time to respond in order to find an attorney. (Dkt. ## 37, 40.) Plaintiff did not retain counsel, and filed a response to Defendants' motion on December 2, 2020. (*See* Resp. (Dkt. # 39).) Plaintiff also filed a surreply on January 4, 2020, in response to Defendants' reply.[1] (Dkt. # 43.) On January 19, 2020, Plaintiff filed the instant motion for an extension of time. (Dkt. # 44.) Plaintiff requests an open-ended extension.[2] (*Id.*)

Plaintiff has not demonstrated that the requested extension is either necessary or appropriate. Plaintiff has already submitted a response and a surreply. His response substantively addresses Defendants' arguments and includes medical records that he believes support his claims. His response also did not raise any concerns about the need to access the law library to litigate his case. While the Court is cognizant of the impact COVID-19 has had on incarcerated plaintiffs, the Court finds granting an open-ended extension to allow Plaintiff access to the law

---

[1] Plaintiff's surreply was not filed in compliance with LCR 7(g), and therefore does not need to be considered by the Court. However, even considering Plaintiff's surreply, the Court still finds this action should be dismissed.

[2] Plaintiff also requests appointment of counsel. The Court has denied Plaintiff's previous requests for appointment of counsel and finds that there has been no change in circumstances that would alter the Court's previous findings. Accordingly, Plaintiff's request for appointment of counsel is denied.

library to prepare a third response to the pending motion for judgment on the pleadings is unwarranted, especially given that any additional response would not be properly before the Court. Because the motion for judgment on the pleadings is fully briefed by all parties, Plaintiff's motion for an extension of time is DENIED.

## IV.    LEGAL STANDARDS

### A.    Rule 12(c) Standards

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). A court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted); *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 (9th Cir. 2011) (explaining that the court "assume[s] the facts alleged in the complaint are true . . ."). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*; *see Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

When a Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer has been filed, or when it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard applies to both. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal for failure to state a claim "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

1    On a Rule 12(c) motion, the court is not strictly limited to considering the face of the

2    complaint. Just like on a Rule 12(b)(6) motion, the court may consider material that is properly

3    submitted as part of the complaint without converting the motion into a summary judgment

4    motion. *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters &*

5    *Joiners of Am.*, 658 F.Supp.2d 1266, 1273 (W.D. Wash. 2009) (citing *Lee v. City of L.A.*, 250

6    F.3d 668, 688 (9th Cir. 2001)). Even if the documents are not physically attached to the

7    complaint, the court may consider them if their authenticity is not contested and the complaint

8    necessarily relies on them. *Id.* at 1273-74 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.

9    1994)).

10    **B.    42 U.S.C. § 1983 Claims**

11    To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

12    violation of his rights protected by the Constitution or created by federal statute; and (2) the

13    violation was proximately caused by a person acting under color of state law. *West v. Atkins*,

14    487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the

15    second prong, a plaintiff must allege facts showing how individually named defendants caused or

16    personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355

17    (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a

18    defendant did an affirmative act, participated in another's affirmative act, or omitted to perform

19    an act he was legally required to do that caused the deprivation complained of. *Id.* (citing

20    *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

21

22

23

## V.    DISCUSSION

### A.    Access to Durable Medical Equipment

Plaintiff alleges Defendants failed to provide him adequate durable medical equipment for his disability.[3] (*See generally* Compl.) Plaintiff's primary complaint is that he was not given elevated medical shoes, although he acknowledges he was given other accommodations such as a wheelchair, cane, walker, and cushion. (*Id*. at 9; Resp. at 2.)

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [ (2) ] the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc). Prison officials violate the Constitution when they "deny, delay or intentionally interfere" with needed medical treatment. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). The same is true when prison officials choose a course of treatment that is "medically unacceptable under the circumstances." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). However, a mere difference of opinion

---

[3] Plaintiff asserts that Defendants, in denying him access to necessary medical equipment, violated his Eighth and Fourteenth Amendment rights. (Compl. at 8.) The Supreme Court has held that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). *See Dodge v. Evergreen School District No. 114*, 2020 WL 4366054, at *3 (W.D. Wash., 2020). Plaintiff's medical claims are properly analyzed under the Eighth Amendment and, thus, the Court recommends dismissing Plaintiff's Fourteenth Amendment claims to the extent he is asserting them.

between a prisoner-patient and prison medical authorities regarding treatment is not enough to give rise to a § 1983 claim. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989).

Defendants argue the exhibits attached to Plaintiff's complaint show he received adequate medical care for his leg disability. (Reply at 2.) Specifically, they assert that his pelvis and knees were x-rayed, that he received specialist care and primary care, and that he also received a CT-scan and cancer treatment. (Reply at 2-3 (citing Compl. at 10, 23, 28, 30, 31, 35, 37, 39, 40, 57).) Defendants further assert that while Plaintiff's cane, wheelchair, and cushion were confiscated after he hit someone, Plaintiff admits he got his walker back after being released from isolation. (*Id.* at 3 (citing Compl. at 11, 39, 40, 42, 55).) Defendants assert that because Plaintiff has failed to allege why a walker is medically unacceptable to accommodate his disability, his claim fails. (*Id.*) Defendants further argue Plaintiff was not completely denied elevated medical shoes, rather, he was denied free shoes because the discrepancy in his leg lengths is not sufficient. (Mot. at 6.) They assert he was given the option to either be re-measured or pursue an offender paid option. (*Id.* (citing Compl. at 42 (Response to Grievance)).)

Plaintiff argues many of the medical appointments cited by Defendants were in relation to his Hepatitis-C, not his leg disability or his requests for elevated medical shoes. (Resp. at 2.) He also asserts his wheelchair, gloves, cushion, and cane were taken from him six days after they were issued, with a note stating they would not be reissued. (*Id.*) He further asserts he requested to have his pelvis and legs remeasured to see if there was a mistake in measuring the length discrepancy but never received a response. (*Id.*) He acknowledges that he has a walker (Compl. at 11-12) but asserts the walker does not accommodate his disability because he still suffers pain when using it. (Surreply at 2.) He asserts elevated medical shoes are the "most reasonable accommodation." (*Id.*)

Here, taking Plaintiff's allegations as true, it appears he was given accommodations for his disability. The exhibits attached to Plaintiff's complaint show that he was seen for his leg disability, in addition to other medical conditions, and received a wheelchair, cane, cushion, and walker. It also appears he received special tennis shoes for his disability. (Compl. at 57.) While his cane, wheelchair, and cushion may have been confiscated soon after they were issued, Plaintiff has not alleged why his walker is an inadequate accommodation, other than to generally assert that he still experiences pain when using it and that he believes elevated medical shoes are the most "reasonable" accommodation. Although the walker may not be his preferred accommodation, his disagreement with treatment is insufficient to support a claim of deliberate indifference. Plaintiff has not presented allegations that prison officials knew he was suffering and failed to address the disability. *See Jett* , 439 F.3d at 1097-98 (a doctor could be held liable for a constitutional violation when he knew that an inmate's thumb was fractured but failed to ensure that the fracture was set and cast); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff could establish a constitutional violation when prison officials were aware that he was suffering from bleeding gums and broken teeth as a result of broken dentures but "failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted"). Accordingly, Plaintiff has failed to allege a constitutional violation.

**B.    42 U.S.C. §§ 12131-12132 Claims**

Title II of the ADA protects against discrimination with regard to the provision of the benefits of a prison's "services, programs, or activities on account of a prisoner's disability." *Castle v. Eurofresh, Inc*., 731 F.3d 901, 909 (9th Cir. 2013). "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2011), *overruled on other grounds by Castro v. City of L.A.*, 833 F.3d

1060 (9th Cir. 2016) (en banc). A prisoner bringing a disability discrimination claim under Title II of the ADA must distinguish between an allegation of a failure to appropriately treat his disability, which fails to state a claim, and an allegation that he was effectively excluded from participation in some program, service, or activity of the public entity because of his disability, which may state a claim.

Here, Plaintiff's ADA claim amounts to an assertion that he was denied accommodations for his disability, and therefore his disability was not adequately treated. He asserts that as a result, he suffers from daily pain and lack of mobility. (Compl. at 10.) This is the type of claim that is not actionable under the ADA, without more. *See Simmons*, 609 F.3d at 1022. Plaintiff identifies no particular service, program, or activity from which he was excluded. Rather, he acknowledges that he was given a wheelchair, cane, and walker at various times for his disability, but was denied elevated medical shoes. These claims are insufficient to sustain an ADA claim.

In his response, Plaintiff asserts he has missed multiple meals and a few callouts due to his pain. (Resp. at 3.) These claims are not asserted in his complaint and therefore the Court properly disregards any new allegations in Plaintiff's response in considering whether his claim is subject to dismissal. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we 'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'") (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)). However, when a plaintiff is *pro se*, the Court is "required to explain the deficiencies" in a complaint and only dismiss with prejudice if it is "absolutely clear" the deficiencies could not be cured by amendment. *Akhtar*, 698 F.3d at 1213; *see also Lucas v. Dep't of Corrections*, 66 F.3d 245, 248-49 (9th Cir. 1995) ("unless it is

1  absolutely clear that no amendment can cure the defect … a pro se litigant is entitled to notice of

2  the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.") The

3  Court may consider "[f]acts raised for the first time in a plaintiff's opposition papers" when

4  deciding whether leave to amend is warranted or whether dismissal should be with or without

5  prejudice. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

6      Even considering the new allegations offered in Plaintiff's response, missing a few meals

7  and callouts does not rise to the level of being excluded from a particular service, program, or

8  activity because of his disability. In short, Plaintiff's ADA allegations amount to no more than a

9  claim of inadequate treatment for his disability and therefore fail as a matter of law.

10      **C.    Plaintiff's Grievance Claim**

11      Plaintiff complains he did not receive a timely response to his grievance, in violation of

12  his First and Fourteenth Amendment rights. Specifically, he asserts that on January 7, 2020,

13  Defendant Dahne arbitrarily extended the deadline to respond to Plaintiff's grievance to January

14  24, 2020. (Compl. at 11.) He also asserts Defendant Dahne lied and stated he made the deadline

15  extension on January 24, 2020, not January 7, 2020. (*Id.*)

16      Plaintiff cannot state a cognizable claim under § 1983 for failure to process his grievance

17  because prisoners have no standalone due process rights related to the administrative grievance

18  process. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850,

19  860 (9th Cir. 2003). The Ninth Circuit has made clear that a prisoner plaintiff does not have a

20  constitutional right to a grievance process, and therefore any claim alleging deficiencies in the

21  grievance process fails to state a claim for relief under § 1983. *See Ramirez*, 334 F.3d at 860

22  (finding a prisoner did not have a claim for a loss of liberty regarding the processing of his

23  grievances because inmates lack a separate constitutional entitlement to a specific grievance

procedure); *Mann*, 855 F.2d at 640 (a prisoner does not have a claim for entitlement to a grievance procedure). Thus, to the extent Plaintiff is asserting his due process rights were violated, his claim fails as a matter of law.

With regard to Plaintiff's apparent First Amendment rights violation claim, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Id.* at 1114–15.

Plaintiff's vague and conclusory allegations fall short of asserting a cognizable retaliation claim. The grievance at issue, attached to Plaintiff's complaint, states the extension of the deadline was due to staff shortages. (Compl. at 47.) Even construing Defendant Dahne's alleged conduct as adverse action, Plaintiff asserts that he chilled his "grievance due process," but fails to assert any factual allegations that it had a chilling effect on his First Amendment activities. Rather, Plaintiff alleges that he appealed Defendant Dahne's deadline extension, and, before receiving a response, filed an emergency appeal. (*Id.* at 11.) It therefore appears Plaintiff was not chilled from using the grievance process or his First Amendment rights, and therefore his claim fails to the extent he asserts a First Amendment retaliation claim. Accordingly, the Court recommends Plaintiff's claims regarding his grievance be dismissed.

1

## VI.    CONCLUSION

2      For the foregoing reasons, the Court recommends that Defendants' motion for judgment

3   on the pleadings (dkt. # 34) be GRANTED and that Plaintiff's complaint and this action be

4   DISMISSED with prejudice. Plaintiff's motion for an extension of time (dkt. # 44) is denied. A

5   proposed order accompanies this Report and Recommendation.

6      Objections to this Report and Recommendation, if any, should be filed with the Clerk and

7   served upon all parties to this suit by no later than **April 13, 2021**. Objections, and any response,

8   shall not exceed twelve pages. Failure to file objections within the specified time may affect your

9   right to appeal. Objections should be noted for consideration on the District Judge's motion

10  calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall

11  be filed no later than **fourteen (14)** days after service and filing of objections. If no timely

12  objections are filed, the matter will be ready for consideration by the District Judge on the date

13  objections were due.

14      The Clerk is directed to send copies of this Report and Recommendation to the parties

15  and to the Honorable Benjamin H. Settle.

16      Dated this 23rd day of March, 2021.

17

18                                             MICHELLE L. PETERSON
                                               United States Magistrate Judge
19

20

21

22

23